UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-2627

OWEN HILL, SCOTT ROMANO, and COLIN PHIPPS

    *Plaintiffs,*

vs.

WAYNE W. WILLIAMS, Colorado Secretary of State, in his official capacity,
CYNTHIA H. COFFMAN, Colorado Attorney General, in her official capacity, and
MITCHELL R. MORRISSEY, Denver District Attorney, in his official capacity,
    *Defendants.*

---

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

---

**INTRODUCTION**

    This election on November 8 will be the first election for two of the Plaintiffs. The Plaintiffs brought this case within days of being warned publicly by Colorado's chief election official and the district attorney of its largest jurisdiction that their political speech is a crime. The Defendants[1] now ask this Court to deny relief on the theory that the suit was brought too late and that it is unreasonable to take seriously what those law enforcement officials told the public just days before the lawsuit was filed.

---

[1] Plaintiffs amended the Complaint on 11/1/16 to add Colin Phipps, registered to vote in Denver, and add the Denver District Attorney as a defendant. Defendant Morrissey filed a nearly identical briefing in the related *Harlos* case, so this Reply will refer to Defendants collectively.

Defendants then urge the court to uphold application of a facially content-based restriction on core political speech because they now come to court with promises from their subordinates that they will not actually enforce the law as it is written. The court should reject these remarkable positions and issue the injunction—both because the statute causes the Plaintiffs constitutional harm independent of any immediate threat of criminal prosecution, and because the newly-presented evidence of prosecutorial intentions cannot overcome the Defendants own pattern of enforcing the law by means other than full criminal prosecution.

A theme runs through the Defendants' Response and attendant affidavits: if only Colorado's law were rewritten in a few ways—to address the taking of photography in polling places; to be limited to evidence of vote selling or intimidation; to exempt digital images—then there would be no reason for concern. Perhaps so; but the law has not been rewritten, and Defendants, Plaintiffs, the public, and this Court are all forced to deal with it as it is. And that form is unconstitutional, facially and as applied.

## ARGUMENT

### I. Defendants concessions make an injunction before election day appropriate.

Defendants effectively concede the main premise of Plaintiffs' case: C.R.S. § 1-13-712(1) is unconstitutional as written due to "First Amendment concerns." Resp. [Doc. #24] Ex. C, ¶ 7; Ex. E, ¶ 7. Instead, they argue that the statute should be upheld because they now promise to apply it only where the speech in question is tied to evidence of other criminality. *Id.* p.9; Exs C-F.

On the merits, this is just the argument the Supreme Court recently rejected in *U.S. v. Stevens*, 559 U.S. 460 (2010). But at the outset, this concession means the Court should at the very least enjoin the application of the statute outside of those circumstances. Doing so would not resolve all of the constitutional problems with this statute, but it would give the plaintiffs and other citizens of Colorado whose speech has been chilled by this statute and its threatened application some comfort as they seek to express themselves in the days before an election. *See Speiser v. Randall*, 357 U.S. 513, 530, (1958) (Black, J., concurring) (stating that the freedoms secured by the First Amendment "are absolutely indispensable for the preservation of a free society in which government is based upon the consent of an informed citizenry and is dedicated to the protection of the rights of all"). And since Defendants and their affiants now "disavow" any intention to apply the law beyond those circumstances anyway, none of their speculative concerns about election administration could be implicated by such an injunction. Plaintiffs believe the proper relief is to enjoin the overbroad statutory language on its face, but in the alternative request this more limited facial relief pending a full review on the merits.

Defendants also tacitly concede that they cannot satisfy the strict scrutiny standard and have waived any argument to the contrary. *See* Resp. at 11-13. On the merits then, the Court's analysis need proceed no further than determining that the statute is content-based, thereby requiring strict scrutiny. Defendant's arguments to the contrary have been rejected by the Supreme Court, as this Court has recognized. *See Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1287 (D. Colo. 2015) (applying *Reed v. Town of Gilbert, Ariz.*, ––– U.S. –––, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015). But even

3

under intermediate scrutiny, the Defendants cannot justify the reach of this law as written, as their own statements and evidence shows and as the First Circuit recently held. *Rideout v. Gardner*, No. 15-2021, ___ F.3d ___, 2016 WL 5403593 (1st Cir. Sept. 28, 2016).

Finally, admitting the statue presents "grave" constitutional problems, Defendants make a last-ditch effort to have this Court use the avoidance doctrine to rewrite the law. Resp. at 14. Defendants' proposal to exempt display of a "digital image" of a ballot would perhaps make the law less extremely overbroad, and might be worth consideration by the legislature (although it is likely still constitutionally suspect). But it is contrary to the warnings the Defendants have made until this suit was filed, and finds no support in the language of the statute or in its history, which is no surprise given that the law predates "digital images" by roughly a century. Defendants' efforts to save the statute are understandable, but as written, and as Defendants publicly interpreted the law until haled into court, the law flatly declares Plaintiffs' planned conduct to be criminal. Since that violates the First Amendment, it should be enjoined.

## II. The Court should reject Defendants' attempt to create a novel per se rule against injunctions prior to an election.

Defendants initially seek to dodge the law's constitutional problems by asking the Court to reject the requested injunction simply because it was filed shortly before the election. But the principle they invoke as support has no application in these circumstances. The principle is not that election-related injunctions are particularly disfavored; to the contrary, such injunctions are regularly issued around the country. *E.g. Citizens United v. Gessler*, 773 F.3d 200, 202 n.1 (10th Cir. 2014) (interim order issued

4

weeks before election enjoining Colorado campaign finance law). The "*Purcell* principle" is simply that courts should take into account the special circumstances around elections, "especially" when "conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) Defendants' effort to conjure disruptions this injunction would create actually show that the "common sense" *Purcell* principle supports an injunction here.

*First*, the assertion that this is a "self-made emergency" is false and should be rejected. The Plaintiffs did no more than express themselves publicly on matters of public concern. It is the Defendants' public statements warning that Plaintiffs and others were, or would be, committing a crime by doing so that created this emergency. Plaintiffs filed this lawsuit two business days after Defendant Morrissey issued a press release: "**REMINDER: BALLOT SELFIES ARE ILLEGAL IN COLORADO**." The law is old, but its publically threatened application to these circumstances is novel, as Defendants themselves emphasize. In addition, two Plaintiffs are voting in their first election and would not have been in the position to challenge or even consider this law before this election, let alone before Defendants' public warnings about this expression. Finally, Defendants Williams and Coffman, apparently recognizing the urgent nature of this case, did not oppose a forthwith hearing before election day on the preliminary injunction, waiving the newly expressed concerns about considering an injunction shortly before the election. See Mot. [Doc. #7].

*Second*, the alleged disruption to the electoral process imagined in the Response is hardly the sort that justifies refusing to recognize—or even address, as Defendants

5

request—legitimate First Amendment concerns. Resp. at 1 (characterizing *Purcell*, as standing for the proposition that "courts should avoid making last minute changes to the status quo as an election approaches."). *Purcell* itself implicated mandatory voter-ID *procedures* for every voter at every polling place in Arizona; a major change to the operation of an election itself and far cry from the sanction challenged here, which by its terms has nothing to do with actual administration of the election itself. In other cases, courts have issued election injunctions despite requiring changes to closing times for polling places, https://goo.gl/wkEKiM, or changes to the buffer distance for exit polling conducted on election day, *Am. Broad. Companies, Inc. v. Wells*, 669 F. Supp. 2d 483, 485 (D.N.J. 2009). At a minimum, the unsupported speculation about disruption is at great odds with Defendants position that nobody will enforce this law against ballot selfies.

Notably, Defendants make no effort to explain why any of this applies to the vast majority of Colorado voters who will cast their ballots by mail. And it also seeks to conflate Colorado's law with that addressed in the still-pending *Crookston* case in Michigan. As an initial mater, the recent procedural order (over a dissent) from the Sixth Circuit staying an injunction pending appeal, is just that – a temporary procedural order, not reflection of the Sixth Circuit's opinion on the merits. Moreover, the *Crookston* case is distinguishable in numerous ways from the Colorado law at issue. Michigan's law and administrative rule, unlike Colorado statute, prohibits photography inside polling places. Michigan lacks the all-mail ballot election system of Colorado. As the *Crookston* order itself recognized, the "ballot selfie" cases in Indiana and New Hampshire, much like Colorado's "ballot selfie" ban, are materially different than the Michigan case. Slip Op. at 6 ("… these decisions

6

concerned laws that were targeted at ballot selfies, not general bans on ballot-exposure and photography at the polls.").

The Response would at least make sense if a similar law banning photography at the polls were being challenged. But Colorado has no such law. *See* Colo. Sec. of State FAQ #17.  http://www.sos.state.co.us/pubs/elections/vote/electionFactSheet.html.  Whatever problems the act of taking a photograph in a polling place might cause are irrelevant to this case, as that is perfectly legal in Colorado. Colorado law instead concerns itself, for whatever reason, about the act of showing the ballot content, not photographing it, and that act of sharing ballot content cannot create any of the problems Defendants claim they wish to avoid.

### III. The case presents a justiciable controversy.

Defendants' arguments that the court does not have subject matter jurisdiction are based entirely on affidavits from prosecutors' offices "indicating that they will not file a case under § 1-13-712(1) under the circumstances described in the complaint." Resp. at 10. As fully explained in the *Harlos* Plaintiffs' Reply, the issue of injury should not be confused with ripeness concerns that are relaxed for cases that challenge overbroad laws that chill speech. For at least two reasons, the last minute affidavits do not deprive the Court of subject matter jurisdiction. First, Plaintiffs' have standing independent of the threat of prosecution doctrine; they are injured by section 712(1) whether or not a criminal prosecution is in the offing. Second, the affidavits do not in fact eliminate the threat of criminal investigation and sanction under section 712(1).

### A. Section 712 injures plaintiffs whether or not they are criminally prosecuted.

Plaintiffs brought this case because, in the absence of the injunctive and declaratory relief sought, they are forced to choose between complying with Colorado law and exercising their First Amendment rights.[2] Notably, neither the Response brief nor the affidavits it relies on say otherwise. They do not declare that what Plaintiff have done or seek to do is, in fact, lawful. Instead, they merely inform the parties and the Court that while the expression is illegal, Plaintiffs may not be criminally prosecuted for it. Defendants have taken and continue to declare publicly that Plaintiffs will be breaking the law if they proceed as planned.

Criminal prosecution is, to be sure, an extreme form of legal injury. But this statute causes other forms: Senator Hill, for example, is running for reelection and would like to be able to have his supporters encourage and congratulate one another to vote by posting photos when they've done so. Public "reminders" by law enforcement officials that doing so is a crime impedes his ability to campaign in this way. That is an injury he suffers whether or not he is personally prosecuted.

Critically, Defendants have never stated that they will no longer enforce the law, merely that they will not prosecute these plaintiffs under these circumstances. But "enforcement" is more than simply criminal prosecution. *See, e.g., D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) ("The chilling effect, to amount to an injury, must arise from

---

[2] It is worth noting that despite the somewhat belittling rhetoric about "ballot selfies," Defendants concede that the expression here political expression at the core of the First Amendment, and thus the analysis applied here would apply to pamphleting, door-knocking, phone calls, or political advertising.

an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement.). The Denver DA's statement has not been retracted. The Secretary of State's statements have not been retracted, but instead reemphasized. Apparently poll watchers and local clerks are being trained that this activity is illegal. *See* Resp. at 4. Whether or not they plan to prosecute anyone criminally, Defendants continue to enforce the law: "reminding" citizens Colorado makes this expression a crime, characterizing simple ballot selfies as "illegal" and explaining the law's importance, and training election officials to enforce it. This has real consequences for citizens who wish to express themselves but also comply with the law.[3]  Without the injunction, they cannot do so.

The newly filed affidavits may decrease the likelihood Plaintiffs becoming criminal defendants for now, but the Plaintiffs are still branded as scofflaws if they continue in their planned course of conduct. Facially, nothing has changed. The statute also causes a chilling effect on all Colorado citizens who wish express themselves but also to comply with the laws of the state.[4]

---

[3] Consider: an opponent runs an advertisement against Plaintiff Hill stating, "Despite warnings from district attorneys and the secretary of state, my opponent willfully violated Colorado election law." Or, a job interview: "Mr. Romano, have you ever knowingly violated a criminal law? Without the relief this Court can provide, Plaintiffs would be forced to admit these things, despite the apparent agreement among the parties that their activities here are protected by the First Amendment. Yet Defendants assert that the Plaintiffs cannot vindicate those rights because they have decided not to prosecute them criminally.

[4] One way to consider this is to imagine if the law had no criminal penalties, as was the case with certain restrictions in the *Burson* case. That did not deprive the Supreme Court of jurisdiction there, because the choice of compliance with the law or constitutional expression does is an injury whether there are criminal penalties attached or not.

9

This case is thus different than *Brown*, *Mink*, or *Colo. Outfitters' Assn. v. Hickenlooper*, 823 F.3d 537, 548 (10th Cir. 2016), or the other cases relied upon in the Response. In those cases, the only potential injury was the prosecution. Here, the injunction and declaration will redress the real harm the Plaintiffs suffer by being forced to break the law in order to express themselves. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) ("By definition, the injury is inchoate: because speech is chilled, it has not yet occurred and might never occur, yet the government may have taken no formal enforcement action. We cannot ignore such harms just because there has been no need for the iron fist to slip its velvet glove.").

### B. A credible threat of prosecution remains.

Plaintiffs incorporate and agree with the analysis in the *Harlos* Plaintiffs Reply, p.6-11, about how a credible threat of prosecution remains after the last-minute affidavits and how the voluntary cessation doctrine prevents the Defendants from mooting the case on the eve of trial.

In addition, Defendants wrongly equate Plaintiffs situation here, with highly publicized enforcement efforts raising the specter of criminal prosecution for engaging in simple political speech, to cases where plaintiffs challenged statutes that were the same as statutes *already declared unconstitutional* in well-known U.S. Supreme Court cases. *D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir. 2004) (anti-sodomy statute challenged after *Lawrence v. Texas*); *Winsness v. Yocom*, 433 F.3d 727, 733 (10th Cir. 2006) (flag desecration statute challenged after *Texas v. Johnson*). Those cases challenged dead-letter statutes, not actively enforced statutes as here.

### IV. The Colorado selfie ban cannot satisfy strict or intermediate scrutiny.

#### A. The law treats social media posts differently based on their content, and thus is a content-based restriction subject to strict scrutiny.

Section 1-13-712(1) is a content-based restriction on speech, subject to strict scrutiny. Because it is not narrowly tailored to serve a compelling governmental interest, it must be declared facially unconstitutional.

The Defendants rely on the recent stay order from *Crookston* to execute a sleight-of-hand regarding content neutrality. *Crookston* challenges two state laws similar to Colorado's exposure ban, and also a Michigan secretary of state order that wholly banned citizen photography in polling places and cell phone use in voting stations. *See Crookston v. Johnson*, --- F.3d ---, 2016 WL 6311623 at *1 (6th Cir. 2016); cf. MICH. COMP. LAWS §§ 168.579; 168.738(2) with C.R.S. § 1-13-712(1). It is the latter of these that the Sixth Circuit panel referenced when it stated "'[t]he [Michigan] Secretary's ban on *photography at the polls* seems to be a content-neutral regulation that reasonably protects voters' privacy'[.]" Dkt. 21 at 12 (quoting Crookston, supra, at *3) (emphasis added). Immediately following this quote, the Sixth Circuit turned to "the ballot-exposure ban[,]" noting it may not be content-neutral. *Crookston*, supra at *3. This is the correct assessment, for it is plainly within *Burson*'s discussion of restrictions on political advocacy—and only political advocacy—within and around polling places being content-based. *See Burson v. Freeman*, 504 U.S. 191, 197 (1992) (plurality opinion) ("Whether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign."). Section 1-13-712(1), like the Michigan statutes (but not

11

the photography order) at issue in Crookston, is a content-based restriction on free speech.

Whether this law is content-based is not dependent, as Defendants would have it, on the intent behind the law. That analysis has been clearly rejected by the Supreme Court in *Reed*. The motivation behind the law is irrelevant; the question is whether the application of the law changes depending on the content of the expression. Id. at XX. In this case, application of the proper doctrine is not complicated: posts on Facebook or other social media are either criminalized or not depending on their content: if the content is a voted ballot, it is regulated; otherwise, it is not. This is the epitome of a content-based law. See Browne.

Setting aside this distinction, Section 1-13-712(1)'s breadth goes far beyond regulating activity within a polling place on election day, as Defendants admit. Most Coloradans vote by mail and are prohibited under this statute from showing their marked ballots anywhere, anytime. This content-based prohibition does not qualify for relaxed *Burson* scrutiny and the State must, instead, show the law is narrowly tailored to serve a compelling governmental interest. *See Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2226–27 (2015). Given Section 1-13-712(1)'s unequivocal ban on the exposure of marked ballots, under justifications that are already punishable under the law or otherwise remediable—from vote-buying to coercion to long lines at the polling place—the statute is not tailored at all.

### B. Even if intermediate scrutiny applies, Defendant cannot show a likelihood of success.

12

This same lack of tailoring is fatal to Section 1-13-712(1) even if this Court applies intermediate scrutiny. Contrary to the Defendants' assertion, the tailoring of intermediate scrutiny is not satisfied "'so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Resp. at 13 (quoting *Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1222 (10th Cir. 2007)). More recent Supreme Court precedent makes clear that the intermediate scrutiny standard is just the opposite: the Defendant must show that the objectives of the statute may be achieved by "less intrusive means[.]" *McCullen v. Coakley*, 134 S.Ct. 2518, 2538 (2014). That is, whether "[a]ny [governmental interest] can readily be addressed through existing . . . ordinances." *Id.* Though not subject to *least* restrictive means analysis, "less restrictive alternatives" must be considered. *Id.* at 2539.

Vote-buying is illegal in Colorado, voter coercion is illegal in Colorado, and these laws are not challenged in this case. These are the same interests Defendants suggest are served by section 712(1). Moreover, the state may protect voter secrecy and mitigate wait times at polling places more effectively through means such as those at issue in Crookston, for example: a photography ban, more voting locations, mail ballots. Colorado has done some of these; that censorship—particularly censorship that goes beyond polling places and covers the entire state of Colorado—might also serve their purposes does not survive even intermediate scrutiny. Section 1-13-712(1) is an unequivocal ban on revealing the content of one's marked ballot anywhere within the state of Colorado. It is a content-based restriction that cannot survive strict scrutiny or even intermediate scrutiny.

## CONCLUSION

The Defendants have conceded that section 712(1) cannot be applied as written because of grave First Amendment concerns. Yet Defendants ask this Court to dismiss the very case that forced them to make that admission, while they continue to publicly declare that what Plaintiffs have done and desire to do is against the law. The Court should reject that sort of gamesmanship and enjoin application of section 712(1) facially or as applied.

Respectfully submitted,

/s/ Michael Francisco
Michael Francisco
MRDLaw
3301 W. Clyde Pl
Denver, CO 80211
303-562-1784 (Direct)
*Michael.Francisco@MRD.law*

/s/ Stephen R. Klein
Stephen R. Klein (#P74687)
PILLAR OF LAW INSTITUTE
455 Massachusetts Avenue NW
Ste. 359
Washington, DC 20001-2742
202.815.0955 (Tel.)
stephen.klein@pillaroflaw.org

/s/ Daniel D. Domenico
Daniel D. Domenico
KITTREDGE LLC
3145 #D Tejon St.
Denver, Colorado 80211
720-460-1432
ddomenico@kittredgellc.com

Dated this 1st day of November, 2016.

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically by email to the attorneys representing the Defendants:

LeeAnn Morrill
First Assistant Attorney General
Public Officials Unit
Matthew Grove
Assistant Solicitor General
State Services Section
1300 Broadway, 6th Floor
Denver, CO  80203
Direct:  720-508-6159
Email:  leeann.morrill@coag.gov; matt.grove@coag.gov

Andrew D. Ringel
Matthew J. Hegarty
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3300
Facsimile: (303) 628-3368
Email: ringela@hallevans.com
*Attorneys for District Attorney Morrissey*

/s/ Michael Francisco